

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00271-CV

**IN THE INTEREST OF N.R.B.-E.**, A.S.M.B.D., A.L.B.-D., and A.B.

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-00669
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: October 28, 2020

AFFIRMED

Appellant Mother appeals from the trial court's order terminating her parental rights to her

four children: eight-year-old N.R.B.-E., six-year-old A.S.M.B.D., four-year-old A.L.B.-D., and

one-year-old A.B.[1] On appeal, she argues the evidence is legally and factually insufficient to

support the trial court's finding that termination of her parental rights is in the best interest of her

children. We affirm.

### STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the

Department has the burden to prove by clear and convincing evidence that parental rights should

---

[1] To protect the identity of the minor children, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factually sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id*.

## CHILD'S BEST INTEREST

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the factors set out in section 263.307 of the Family Code should be considered. *See* TEX. FAM. CODE § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the child, a

---

[2] These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health

factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

The children in this case were removed from Appellant Mother when A.B. tested positive for cocaine at the time of his birth. When questioned by a caseworker, Appellant Mother admitted to using illegal drugs. In addition to the concerns about substance abuse, there were also allegations of physical abuse and domestic violence. Appellant Mother's court-ordered family service plan required her to complete individual therapy, domestic violence classes, a drug assessment, a psychological assessment, and parenting classes. At the time of trial, Appellant Mother had had two years in which to complete her services. However, according to the caseworker, Appellant Mother had only completed her psychological assessment. Appellant Mother had engaged in individual therapy but had been unsuccessfully discharged in July 2019. When the caseworker asked Appellant Mother why she had not engaged in her services, Appellant Mother said she had transportation problems. The caseworker testified she told Appellant Mother that she could provide

---

and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[3]These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

bus passes but that she would need the dates in advance to request them. Appellant Mother, however, never provided any dates.

The caseworker testified that Appellant Mother was also required, but failed, to comply with requests for urinalysis drug testing. Further, Appellant Mother never completed a drug assessment or engaged in any type of drug treatment.

In addition to addressing her substance abuse issues, Appellant Mother was required to gain employment and have stable housing. The caseworker testified that Appellant Mother had not provided any proof of employment during the two years the case was pending. With respect to housing, the caseworker testified that Appellant Mother moved a lot throughout the case and had not provided an address where the caseworker could perform a home study. At the time of trial, the caseworker testified that she knew Appellant Mother was living in an apartment, which she believed belonged to Appellant Mother's boyfriend because she would see him "pop in and out during the virtual visits." The caseworker testified Appellant Mother had not given her a copy of the lease or even the apartment number.

The caseworker testified that at the time of trial, N.R.B.-E. was placed in a foster home, A.S.M.B.D. and A.L.B.-D. were placed in a "fictive kin home," and A.B. was placed in a separate foster home. Although the two older children, N.R.B.-E. and A.S.M.B.D. had "severe educational deficits" and were both "very behind" in school because they never attended school consistently while under Appellant Mother's care, the caseworker testified all their basic needs were being met by their current placement and they had no special needs.

When Appellant Mother testified, she claimed to have completed all the classes required by her family service plan. She testified that she completed a "parenting class, a domestic violence class, and a drug class." She stated that all she needed was her drug assessment, which was scheduled in a few days. She then admitted that her parenting class had not, as of yet, been

completed, but that her last class was that afternoon, that the class would be "only thirty-five minutes long," and that the certificate of completion would be emailed that day. When asked where she was taking these classes, Appellant Mother replied, "Alpha Home," which she admitted was not a place to which she was referred by the Department. Appellant Mother testified she "reached out to Alpha Home" because "there was a program where all four classes could be in one." She acknowledged that her caseworker had never told her classes through Alpha Home would be sufficient to complete services under her family service plan.

With regard to her housing, Appellant Mother testified she was living with her best friend at her best friend's apartment. Before that, she had been "staying with [her] cousin." Appellant Mother claimed to have always informed the caseworker where she was living: "I even told her sometimes I was sleeping in my car." When asked about employment, Appellant Mother testified she had an interview at a convenience store that week, but admitted that she had not had a job during the two years the case had been pending. When asked how she supported herself, Appellant Mother replied that her father and boyfriend helped her.

Appellant Mother admitted that she had had a "drug problem" at the time her son was born with cocaine in his system. She further admitted that she had not complied with her caseworker's requests to take drug tests. Nevertheless, she believed that her children were removed from her care, not because of her substance abuse problem, but because they "were homeless" at the time. She claimed to have not used illegal drugs for a year.

In considering the relevant best-interest factors, we note that there was evidence that Appellant Mother has a substance abuse problem that had affected A.B., who was born with cocaine in his system. *See In re E.C.R.*, 402 S.W.3d at 249 n.9 (listing *Holley* factors). There was also evidence that Appellant Mother had not taken steps in the two years this case had been pending to address her problem and had avoided taking drug tests as requested by the caseworker. Thus,

there is evidence that she poses a danger to the welfare of her children and could not provide them with a safe environment. Further, evidence at trial showed that Appellant Mother could not provide a stable home for her children or support them financially. There was evidence that Appellant Mother moved frequently during this case and had not provided an address from which the caseworker could perform a home study. Appellant Mother admitted at trial that in the two years this case had been pending, she had never obtained any employment. Instead, she had relied on her father and boyfriend for support. Finally, there was evidence that the children have been placed in the care of foster parents and fictive kin who were meeting the children's needs. While the caseworker testified the children were bonded with their mother, having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the jury could have formed a firm belief or conviction that termination of Appellant Mother's parental rights was in her children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344-45. We therefore hold the evidence is both legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

The trial court's order terminating Appellant Mother's parental rights is affirmed.

Liza A. Rodriguez, Justice